IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

GREGORY WALKER and
SERENA WALKER,

          Plaintiffs,

v.                                  CIVIL ACTION NO. 3:24-0063

AMERICAN STRATEGIC
INSURANCE CORP.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant American Strategic Insurance Corp.'s Motion to Dismiss Plaintiffs' Complaint. ECF No. 8. For the reasons that follow, the motion is **DENIED.**[1]

### I.  Background

Plaintiffs Serena and Gregory Walker plead the following facts against Defendant American Strategic Insurance Corp. ("ASI"). Plaintiffs own real property, comprised of land and a dwelling, at 169 Right Fork Beech Fork Road in East Lynn, Wayne County, West Virginia. Compl. ¶ 3. Plaintiffs applied for and received a homeowner's insurance policy for that property through ASI (hereinafter "ASI Policy"), with a policy period of July 28, 2023 to July 28, 2024. *Id.* at ¶¶ 7–9. The "Dwelling Coverage" for the property was up to $250,000, and the Plaintiffs paid a premium of $1,303.00. *Id.* at ¶¶ 10–12.

---

[1] In making its decision, the Court considered the following documents: Plaintiff's Complaint, ECF No. 1; Defendant American Strategic Insurance Corp.'s Memorandum of Law in Support of Its Motion to Dismiss ("Def.'s Mem."), ECF No. 9; Plaintiffs' Response in Opposition to Motion to Dismiss ("Pls.' Resp."), ECF No. 10; and Defendant American Strategic Insurance Corp.'s Reply in Further Support of Its Motion to Dismiss ("Def.'s Reply"), ECF No. 12.

Prior to applying for the ASI Policy, Plaintiffs obtained separate homeowner's insurance through West Virginia Insurance Company (hereinafter "WVI Policy"), with a policy period of May 13, 2023 to May 13, 2024. *Id.* at ¶ 15. The WVI Policy provides Plaintiffs' "Residence" with a "Coverage Limit" of $96,000. *Id.* at ¶ 16. The "Residence" covered by the WVI Policy is the same structure as the "Dwelling" coved by the ASI Policy. *Id.* at ¶ 27.

On or about October 23, 2023, a fire occurred at the property covered by the ASI Policy. *Id.* at ¶ 21. The fire resulted in a total loss of the covered "Dwelling." *Id.* At the time of the "Fire Loss" both the ASI Policy and the WVI Policy were "in full force and effect." *Id.* at ¶ 22.

Plaintiffs reported the Fire Loss to Defendant ASI the same day and initiated a claim for coverage under the ASI Policy. *Id.* at ¶ 23. Plaintiffs also initiated a claim under the WVI Policy. *Id.* at ¶ 26. Both insurers determined that the claims were valid and that the Fire Loss resulted in a total loss of the covered Residence/Dwelling. *See id.* at ¶ 25, 28–29.

With respect to covering the Fire Loss, the ASI Policy provides two relevant provisions. *First*, the section headed "How A Loss Will Be Settled" provides, in pertinent part:

> Covered property losses are settled as follows:…
>
> 2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, **subject to the following**:
>     a. We will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:
>         (1) The limit of liability under this policy that applies to the building;
>         (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or
>         (3) The necessary amount actually spent to repair or replace the damaged building.
>
> **In the event of a total loss, we will pay the limit of liability under this policy that applies to the building.**

*Id.* ¶ 13 (emphasis in Complaint).

*Second*, the section headed "Other Insurance And Service Agreement" states,

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss;…

*Id.* at ¶ 14.

Given this second provision, if the relevant property is covered by more than one policy, "the total of $250,000 in coverage is to be paid by both insurers with each insurer paying its proportional share based on its respective stated limit on the 'Dwelling'/'Residence[.]'" *Id.* at ¶ 31. Accordingly, "Defendant ASI owes 72.25% of Plaintiffs' covered loss," or $180,625.00. *Id.* at ¶ 32. Yet, "Defendant ASI wrongfully has offered only $104,144.15 in a full discharge of its payment duty for that coverage." *Id.* at ¶ 34.

Defendant ASI's calculation is based on 72.25% proportional share of a "replacement cost estimate" of $144,144.15, rather than the $250,000 limit of liability that applies to the Dwelling. *See id.* at ¶ 35.

On the other hand, "in a good faith recognition of its true payment duty, WVI has agreed to pay $69,375.00 as the correct amount due and owing from it upon the 'Residence' coverage claim, gauged off of $250,000." *Id.* at ¶ 39.

As a result of Defendant ASI's refusal to pay Plaintiffs' policy limit claim, Plaintiffs filed suit in this Court asserting breach of contract and statutory and common law "bad faith" claims.

## II. Legal Standard

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim

to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

### III. Analysis

**A. Plaintiffs Have Stated a Valid Claim for Breach of Contract**

To state a valid claim for breach of contract under West Virginia Law, a plaintiff must plead the following: "[1] the existence of a valid, enforceable contract; [2] that the plaintiff has performed under the contract; [3] that the defendant has breached or violated its duties or obligations under the contract; [4] and that the plaintiff has been injured as a result." *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009).

Upon review of the Complaint, the Court is satisfied that Plaintiffs have pled sufficient facts to support a breach of contract claim. *First*, Plaintiffs allege that ASI "underwrote and issued" a homeowners policy to the Plaintiffs that covers their property. *See* Compl. ¶¶ 7–12. *Second*, Plaintiffs allege that they have performed under the contract by paying premiums and submitting an adequate Dwelling Coverage claim. *Id.* at ¶¶ 11, 12, 23–24, 45. *Third*, Plaintiffs allege that Defendant denied their Dwelling Coverage claim despite contractual language requiring coverage. *Id.* at ¶¶ 13–14, 22, 24, 28, 30, 32, 34–37, 40, 46–47. *Fourth*, Plaintiffs allege that the Defendant's breach has injured Plaintiffs to the tune of more than $76,000.00. *See id.* at ¶¶ 34, 47.

Still, Defendant opines that the breach of contract claim must be dismissed, curiously arguing that "Plaintiffs [sic] breach of contract claim is premised entirely on the application of the Valued Policy Law." Reply at 1.

That law provides, in pertinent part,

> All insurers providing fire insurance on real property in West Virginia shall be liable, in case of total loss by fire or otherwise, as stated in the policy, for the whole amount of insurance stated in the policy, upon such real property; and in case of partial loss by fire or otherwise, as aforesaid, of the real property insured, the liability shall be for the total amount of the partial loss, not to exceed the whole amount of insurance upon the real property as stated in the policy. This section does not apply where such insurance has been procured from two or more insurers covering the same interest in such real property.

W. Va. Code § 33-17-9. Thus, the Valued Policy Law does not *require* insurers to pay the whole amount of insurance stated on the policy if property is covered by more than one policy.

Based on this statutory exception, Defendant contends that the Valued Policy Law "is inapplicable to the Plaintiffs' fire loss claim." Def. Mem. at 5. To be sure, the Court agrees with the Defendant that Plaintiffs could not state a valid claim under West Virginia Code § 33-17-9. But that conclusion is irrelevant to the claim before the Court.

It is clear, on the face of Plaintiffs' Complaint, that their breach of contract claim arises from the provisions of the ASI Policy. *See* Compl. ¶ 46 ("Defendant ASI has offered substantially less in settlement of Plaintiffs' Dwelling Coverage claim than is correct, lawful, and called for **under Defendant's Policy.**" (emphasis added); *id.* ¶ 47 ("By denying Plaintiffs' claim for Dwelling Coverage gauged off the $250,000 stated limit **of its policy**, Defendant ASI has materially **breached its contract of insurance with Plaintiffs**[.]") (emphasis added).

In fact, there are only two mentions of the Valued Policy Law in Plaintiffs' Complaint, and the second is contained within Plaintiffs' bad faith claim. *See* Compl. ¶¶ 30;[2] 54. The Court is hard pressed to take seriously that a passing reference to the statute in the facts section of the Complaint somehow subsumes the Plaintiffs' clear contention that the Defendant failed to comply with the terms of its own policy.[3]

It seems disingenuous to argue that because the text of the ASI Policy partially mirrors the statutory language of the Valued Policy Law, the Valued Policy Law somehow governs the entire dispute. The absurdity of this argument is underscored by the Defendant's inability to provide legal support for it.[4]

West Virginia has long recognized that "[w]here the provisions of an insurance policy contract are clear and unambiguous … full effect will be given to the plain meaning intended." Syl. Pt. 5, *Am. Nat'l Prop. & Cas. Co. v. Clendenen*, 793 S.E.2d 899 (W. Va. 2016). Here,

---

[2] That paragraph states,

> Because the Fire Loss occurrence resulted in the total loss of Plaintiffs' 'Dwelling', pursuant to West Virginia Code §37-17-9, pursuant to Defendant's Policy, and otherwise pursuant to applicable law, Plaintiffs are entitled to recover an amount equal to the total stated limit of $250,000 under the 'Dwelling Coverage' of Defendant's Policy.

[3] In their briefing, Plaintiffs submit that their reference to West Virginia Code § 37-17-9 "adds to the Complaint's plausibility." Pls.' Resp. at 5. They argue that the legislative intent of that statute was to protect consumers from an over-valuation of an insured's residence for the purposes of obtaining higher premiums and then contesting the value of the residence when a loss occurs. *Id.* at 6–7 (citing *Filiatreau v. Allstate Ins. Co.*, 358 S.E.2d 829 (W. Va. 1987). But, inasmuch as Plaintiffs' have not, and cannot, bring a claim under § 37-17-9, the Court need not look to West Virginia's statutory scheme.

[4] Defendant's citations to *Filiatreau v. Allstate Insurance Company*, 358 S.E.2d 829 (W. Va. 1987), are not compelling. *Filiatreau* simply explains, in passing, the multiple policy exception set forth in the Valued Policy Law. It does not address a situation where the text of the insurance policy expressly sets forth how claims involving more than one insurance policy will be treated by the insurer.

Defendant wrote the ASI Policy, and in doing so not only declined to include the limiting language that appears in the Valued Policy Law but also specifically set forth how claims involving multiple insurance policies would be processed. *See* Comp. ¶ 13 ("In the event of a total loss, we will pay the limit of liability under this policy that applies to the building."); *id.* at ¶ 14 ("If a loss covered by this policy is also covered by . . . [o]ther insurance, we will pay only the portion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss[.]"). It cannot now disclaim the words it wrote simply because West Virginia law does not *mandate* the coverage it agreed to provide Plaintiff.

In sum, West Virginia's Valued Policy Law sets a floor, not a ceiling. Insurers are permitted to provide greater insurance than is required by the law, and here it appears that the Defendant chose to do so.

Thus, inasmuch as Plaintiffs have obviously and plausibly alleged all the elements of a breach of contract claim, Defendant's motion to dismiss Count I is **DENIED**.

**B.  Plaintiffs Have Stated Both Common Law and Statutory Bad Faith Claims.**

1. Common Law Bad Faith

In West Virginia "an insured has a right to bring a first-party common law or statutory bad faith action against its insurer." *State ex. Rel. State Auto Prop. Ins. Cos. v. Stucky*, 806 S.E.2d 160, 165 (W. Va. 2016). Such actions are defined as claims "wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured." *State ex rel. Allstate Ins. Co. v. Gaughan*, 508 S.E.2d 75, 86 (W. Va. 1998).

Defendant poses a single argument against Plaintiffs' common law claim: any bad faith claim relying on the implied covenant of good faith and fair dealing must be dismissed because Plaintiffs failed to state a valid claim for breach of contract. *See* Def.'s Mem. at 7; Def.'s Reply 1–

2. However, in light of this Court's finding that Plaintiffs have stated a claim for breach of contract, this argument is unavailing. Defendant's motion to dismiss Plaintiff's common law bad faith claim is **DENIED**.

2. <u>Statutory Bad Faith</u>

In addition to common law bad faith claims, insured individuals may be able to pursue claims against insurers under West Virginia's Unfair Trade Practices Act ("UTPA"), W. Va. Code § 33-11-1 et seq., if they can show that the insurer engaged in a "general business practice" of unfair claim settlement. *State ex rel. Allstate Ins. Co. v. Gaughan*, 640 S.E.2d 176, 181 n.6 (W. Va. 2006).

Defendant argues that Plaintiffs' statutory bad faith claim fails because Plaintiffs have failed to allege that it committed unfair claim settlement practices "with such frequency as to indicate a general practice." Defs.' Mem. at 8 (quoting W. Va. Code § 33-11-4(9)).

Plaintiffs' Complaint alleges as follows:

Defendant ASI's breaches of duty include but are not limited to the following actions:

(a) By determining and setting high limits of liability upon its policy so as to collect commensurate premiums from Plaintiffs, with the intention and/or later conduct of refusing to pay the full limits upon a total loss of the dwelling caused by fire;

(b) By failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under insurance policies, or by the failure to adhere to such standards;

(c) By failing to conduct a prompt, fair, and reasonable investigation of Plaintiffs' Fire Loss insurance claim;

(d) By not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' Dwelling Coverage insurance claim after liability became reasonably clear;

(e) By compelling its insureds to institute and prosecute costly litigation to recover amounts due and owed under the Defendant's Policy; and,

  (f) By other acts and omissions to be revealed as this action proceeds.

Compl. ¶ 55. The Complaint goes on to state that Defendant's unlawful actions are "ongoing and continuing," and that its "unlawful and actional insurance handling conduct, as described above and as will be further developed in discovery, has occurred and is occurring with such frequency in this claim and, upon information and belief, has been practiced by Defendant ASI with such frequency in other claims, as to constitute a general business practice." *Id.* at ¶¶ 56–57.

  Defendant avers that Plaintiffs' "conclusory allegations" regarding its general business practice are insufficient to withstand a motion to dismiss. *See* Def.'s Mem. 8–9. If Plaintiffs' Complaint relied only on Defendant's alleged unfair practice in other claims, Defendant's argument might be well taken.

  However, it is well established that a "general business practice" of unfair claim settlement can be based on an insurer's handling of a single claim. *See Moses Enterprises, LLC v. Lexington Ins. Co.*, No. CV 3:19-0477, 2021 WL 1566843, at *2 (S.D.W. Va. Apr. 21, 2021); *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 823 (W. Va. 2005); *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 13 (W. Va. 1996).

  A valid UTPA claim against an insurer based on a single claim simply requires a plaintiff to plausibly plead the insurer "(1) violated the UTPA in the handling of the claimants claim and (2) that the insurer committed violations of the UTPA with such frequency as to indicate a general business practice." *Holloman*, 617 S.E.2d at 823.

  The UTPA lists fifteen general business practices that amount to unfair claim settlement practices. W. Va. Code § 33–11–4(9)(a)–(o). Additionally, the Insurance Commissioner has promulgated rules (hereinafter "Insurance Regulations") to "define certain practices in [West

Virginia] which constitute unfair ... practices ... and methods of settlements" of insurance claims. W. Va. Code R. § 114–14–1.1(a).

Plaintiffs' Complaint alleges multiple acts of bad faith, all of which are expressly forbidden by the UTPA. Plaintiffs allege Defendant "determine[ed] and set[] high limits of liability upon its policy so as to collect commensurate premiums from Plaintiffs, with the intention and/or later conduct of refusing to pay the full limits upon a total loss of the dwelling caused by fire[.]" Compl. ¶ 55. Plaintiffs further allege "[a]lthough it owes Plaintiffs $180,625.00 under the 'Dwelling Coverage', Defendant ASI wrongfully has offered only $104,144.15 in a full discharge of its payment duty for that coverage." Compl. ¶ 34. Plaintiffs continue, "Defendant ASI has offered substantially less in settlement of Plaintiffs' Dwelling Coverage claim than is correct, lawful, and called for under Defendant's Policy." Compl. ¶ 46. Plaintiffs then allege Defendant "compel[ed] its insureds to institute and prosecute costly litigation to recover amounts due and owed under the Defendant's Policy[.]" Compl. ¶ 55.

These allegations are enough, at the pleading stage, to plausibly allege that the Defendant is responsible for "frequent and rather general disregard for the several proscriptions separately set out in the relevant statute." *Dodrill*, 491 S.E.2d at 13. As such, Defendant's motion to dismiss Plaintiffs' statutory bad faith claim under the UTPA is **DENIED.**

**C. Plaintiffs Have Clarified that They Are Not Pursuing Stand Alone Claims for Damages.**

Finally, Defendant argues that Count III should be dismissed as a matter of law because West Virginia does not recognize a standalone claim for damages. Def.'s Mem. at 9–12. Plaintiffs Response makes clear that they are not asserting a "claim" for damages, but rather that the damages listed in that section connect to the breach of contract and bad faith causes of action. Inasmuch as Plaintiff disclaims any request to pursue damages as a standalone claim, Defendants' motion to

dismiss Count III is **DENIED AS MOOT.**

## IV. Conclusion

In light of the foregoing, Defendant American Strategic Insurance Corp.'s Motion to Dismiss Plaintiffs' Complaint, ECF No. 8, is **DENIED**.

As a final aside, the Court notes that parties certainly have a right under the Federal Rules of Civil Procedure to file timely motions to dismiss where there is a valid basis to do so. Still, it cannot be understated that when it is obvious that a claim has been sufficiently pled, it is a much better use of the Court and the parties'—including the Defendant's—resources to file an answer.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 29, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE